## R. A. MURDOCK *v.* W. H. DANIEL AND W. S. DAVENPORT, EXECUTORS.

1. ATTACHMENT. *Voluntary payment by garnishee. Guaranty of creditor. Rights of debtor.*

   In November, 1866, M. recovered a judgment in attachment against S. as debtor and D. as garnishee, for $334.69. The judgment against S. was by default, upon proof of publication as to a non-resident. In July, 1867, D. voluntarily paid the amount of the judgment and took from M. a receipt, in which he agreed "to make good to D. in payment of his indebtedness, for that amount, to S." D. had been indebted to S. in the sum of $1,901, but his debt was assigned to C. before the institution of the attachment proceedings, though D. had no notice of the assignment when he made the payment to M. In December, 1870, C. sued D. on his debt of $1,901, and the Circuit Court refused to allow a credit thereon for the $334.69 paid by D. to M. The latter was not a party to this suit, and had no notice of it. In January, 1875, the executors of D. brought an action against M. to recover, upon the agreement above quoted from, the money therein acknowledged to have been received by him. *Held*, that this agreement was a guaranty to D. that M. would make good the payment of $334.69 as a discharge *pro tanto* of the debt of $1,901; and as D. did not notify M. of the suit by C., he was bound to show that he made the defence of such payment, and that it was not maintainable; and the decision of the Circuit Court against that defence, if erroneous, does not protect D. The judgment against D. was, as to M., *res inter alios acta.*

2. SAME. *Against non-resident. Judgment by default. Voluntary payment by garnishee. Effect thereof.*

   Sect. 1749 of the Code of 1871 provides that after judgment by default, in attachment against a non-resident upon proof of publication only, the plaintiff shall, before any sale be made, enter into bond, with good security, conditioned to restore the money if the defendant shall within a year and a day come into court and disprove or avoid the debt, and that every sale made without such bond having been given shall be void. The purpose of this provision is to secure to defendants who have not been served with notice, and have not appeared, an opportunity to defend the suit within the time limited thereby; and the giving of the bond in such case is a condition precedent to a forced sale of the debtor's property, or to the issuance of execution against the garnishee. But if a garnishee choose to pay such judgment without the bond having been given, the payment is provisionally good. subject to be annulled in case the debtor shall disprove or avoid the attachment debt.

3. SAME. *Judgment by default, on publication. Voluntary payment by garnishee. Rights of debtor.*

   In case of such voluntary payment by the garnishee, the defendant in attachment may bring an action to recover the debt due him by the garnishee, as if no payment had been made, and so long as his right of action on such debt continues he is entitled to the opportunity to disprove, in the suit against the gar-

nishee, the debt upon 'which the attachment is based; but to entitle him to re-cover against the garnishee for the amount paid by the latter to the attachment creditor, he must, in the suit against the garnishee, disprove the attachment debt, just as if the bond had been given and he had come into court to avoid the judgment in attachment.

4. SAME. *Bond under sect. 1479, Code of 1871. For whose benefit.*
The bond required by sect. 1479 of the Code of 1871 was intended solely for the benefit of the defendant in attachment, and not to protect his assignee of a debt due by a garnishee.

ERROR to the Circuit Court of Chickasaw County.

Hon. J. A. GREEN, Judge.

The case is stated in the opinion of the court.

*W. F. Tucker*, for the plaintiff in error.

1. In the construction of the agreement sued upon, I invoke the familiar rule that "the contract shall be so interpreted as to give effect to the intention of the parties, as far as it is legal and mutually understood." 2 Story on Con. (5th ed.), sects. 634, 774; *Nash* v. *Towne*, 5 Wall. 689; *Quackenboss* v. *Lansing*, 6 Johns. 49. "The interpretation and construction of a contract shall be favorable and liberal." 2 Story on Con., sect. 640. "Especially is this the case in commercial contracts." Id., sect. 640 b.

The assignee of Shaw obtained a judgment against Daniel's executors for $1,828.46. Only a part of this has been paid, viz., "less than the sum of $1,200." It is upon this payment of less than $1,200, and the fact of the recovery of a judgment for $1,828.46 against them, that the defendants in error base their right to recover in this action. Now, it must be remembered that Daniel owed Shaw, at the time of the execution of the writing sued on, $1,901.66⅔, less the sum of $334.69 paid to Murdock. Shaw might have called on Daniel the next day for the balance due him. This fact must have been recognized by Murdock and by Thornton, Daniel's agent, when the writing in suit was executed. What, then, were the intentions of the parties? Could it have been the intention of Murdock to bind himself to refund the sum of $334.69, if that amount should the next day be demanded by Shaw, and paid by Daniel on

his debt of \$1,901.66⅔?   Could it have been the intention of Thornton to demand more than that his principal, Daniel, should be secured from future loss by the payment made by him to Murdock?

It would have been the merest farce for Murdock to have sued Shaw and garnished Daniel, if upon payment of a like sum he was to refund the money he had collected.   It would have been unjust and wicked on the part of Thornton to wish to recover the money back, unless his principal was compelled to pay the whole of his debt to Shaw, and suffered loss by the payment to Murdock.   If a payment of a thousand or twelve hundred dollars would justify the claim here sought to be enforced, the payment of the precise amount which Murdock received would be equally as good a reason.   Such could not have been the *intention* of the contracting parties ; and if it was not their intention, the writing sued on will not bear the construction placed upon it by counsel for defendants in error.

Again : the rules of construction require a *liberal* construction of the contract, and yet counsel for defendants in error assert that it is not necessary to show that anything has been paid by Daniel, if a judgment has been obtained against him or his representatives.   Suppose that the execution be returned *nulla bona;* suppose that Daniel or his representatives refuse to pay anything on the judgment and cannot be compelled to do so, would the mere fact of the existence of a judgment against them, which they had refused to pay, authorize them to sue for and recover a sum of money which had been lawfully paid, and which had occasioned no loss to them?

The only construction which can be placed upon this contract which will carry out the obvious intention of the parties is, that Murdock intended to hold Daniel harmless and guaranty him against loss by payment of the \$334.69, and if the whole amount of his debt of \$1,901.66⅔ should have to be paid by Daniel, without receiving credit for the amount paid him, then he, Murdock, was to " make that amount good," but not otherwise.   Unless Daniel or his estate suffered some loss or

injury by the payment to Murdock, the plaintiffs below are not entitled to recover in this action. The proof shows that neither Daniel nor his executors have had to pay enough of the debt to include the amount of the payment made to Murdock, and therefore there has been no loss or injury by such payment.

2. It is alleged that, Shaw being a non-resident and notified by publication, a bond was necessary, under art. 23, p. 379, of the Code of 1857. If the bond was not given, that would not make the judgment invalid. If such bond had been given, it would have been conditioned for the restoration to Shaw of the moneys received, if within a year and a day he should disprove or avoid the debt. It is not alleged that within that time Shaw did appear and disprove or avoid Murdock's debt. The object of art. 23, p. 379, of the Code of 1857 was to prevent sales without giving the non-resident debtor an opportunity to disprove the claim. Years have elapsed, and Shaw has not appeared to dispute Murdock's claim. The bond was to be given *after* judgment and *sale*, and a sale without such bond would have been utterly void. It is evident that the failure to give the bond cannot affect the judgment. A voluntary payment was made by Daniel's agent, and an agreement entered into which we have the right to suppose was in lieu of the statutory bond.

*W. F. Tucker* also made an oral argument.

*Houston & Reynolds*, for the defendants in error.

Murdock could not have had an execution issued upon the judgment in attachment without first having made a bond to refund the money in a certain event, as required by the Revised Code of 1857, p. 379, art. 23. Murdock, desiring to avoid giving the legal bond, but choosing to make his own contract, gave his receipt for the money, which sum he agreed "to *make good* to Daniel, in payment of his [Daniel's] indebtedness, for that amount, to Shaw."

This contract has no such condition in it as, that before Murdock should make good the amount of money he got under

it to Daniel, in payment of Daniel's indebtedness, for that amount, to Shaw, Daniel should have to allege and prove that the money had been forced from him by *duress*, or had been collected by an execution.   If it had been collected by execution, Murdock would have received it from the sheriff, not from Daniel's agent.   Besides, if the money had been collected under execution, Murdock would have had no occasion to make such agreement.   The contract was made in consideration that Murdock should not be compelled to give the bond in order to obtain an execution, and thereby collect the money on his judgment.   Murdock avoided the form of contract which the law prescribes in such cases, and formulated one which suited himself; and since he declined to pursue the mode pointed out by law for the protection of both plaintiff and defendant, but carved out his own security, he cannot now demand the fruits which a legal course would have brought him.

It is objected that the declaration failed to allege that within a year and a day after the rendition of the judgment for $334.69 in favor of Murdock against Shaw, debtor, and Daniel, garnishee, the defendant Shaw came into court and disproved or avoided said judgment.   There were no such conditions in the contract which Murdock executed to Daniel at the time Daniel paid over the money.   That contract was "that Murdock should make good to T. R. Daniel, in payment of his indebtedness, for that amount, to W. A. Shaw."   What did that mean?   Did it mean that *that* making good should be *within* a year and a day, or that the making good to Daniel should depend on Shaw going into court within a year and a day and setting aside the judgment, or otherwise annulling it?

Is it not plain that no such limitation or condition was contemplated, but, on the contrary, that the parties intended, whenever Daniel was called upon to pay this $1,901.66⅔ note, that Murdock was to step forward and make it good to Daniel, by paying the amount which Daniel had paid him under that contract, as so much on Daniel's indebtedness on

the $1,901.66\frac{2}{3}$ note?   There was no condition in the contract
that Murdock should  pay back  to Daniel  the money which
he received from Daniel, upon condition that Daniel shall first
have paid up to Shaw or his assignee  the full  amount of
$1,901.66\frac{2}{3}$.   No such language is used, nor  any which could
legitimately be so construed.   That contract contemplated,
not that Daniel was to pay the *whole* amount, or *any* amount,
of the Shaw indebtedness as a condition precedent to Mur-
dock's liability, but that whenever Daniel's liability should  be
fixed on that Shaw indebtedness, then Murdock was to make
the amount received by him good to  Daniel, by stepping for-
ward and paying that amount on the Shaw debt.   It did not
contemplate the payment to Daniel, nor did payment by Mur-
dock on the Shaw debt depend  upon Daniel ever  paying one
cent thereon.    It depended alone on the contingency of liabil-
ity being fixed against Daniel on the Shaw indebtedness.

It was not necessary that the declaration should state that
Daniel had paid anything on the indebtedness to Shaw.   The
contract was that Murdock should make the amount he got
good to Daniel in a payment of that amount on that indebted-
ness, and whenever that indebtedness was an established and
fixed one by a judgment that rendered Murdock liable, to make
the amount he received from Daniel good to Daniel, by pay-
ment of that amount on it.

In  order to  create  a  liability on R. A. Murdock  to make
good to Daniel  the amount of  money received by Murdock
from him under the contract sued on, it was not necessary that
Daniel should have paid off the judgment on the $1,901.66\frac{2}{3}$
note.   It was  sufficient  that a  judgment was  recovered
against Daniel's executors by Shaw or  his assignees, render-
ing the estate of Daniel liable.

*R. O. Reynolds*, of counsel  for the defendants  in error,
argued the case orally.

GEORGE. J., delivered the opinion of the court.

In November, 1866, Murdock, the plaintiff in error, recov-

ered a judgment in attachment against W. A. Shaw as principal debtor, and against T. R. Daniel as garnishee, for the sum of $334.69. The judgment in attachment was rendered by default against Shaw as a non-resident, upon proof of publication only. In July, 1867, T. R. Daniel, the garnishee, through his agent, paid this judgment and the interest, and took from Murdock an instrument in which Murdock acknowledged the receipt of the money, "which sum he agreed to make good to T. R. Daniel in payment of his indebtedness, for that amount, to W. A. Shaw."

Daniel was indebted to Shaw in the sum of $1,901, principal. In December, 1870, the assignee of Shaw sued Daniel on this debt for $1,901, and Daniel's defence to the suit, based on the payment of the debt to Murdock, was disallowed, upon the ground that Murdock had not given the bond required by sect. 1479 of the Code of 1871, conditioned to restore the money if the defendant in attachment would appear and disprove the debt within a year and a day. The executors of Daniel brought this suit against Murdock upon the instrument hereinbefore set out, to recover back the money acknowledged to be paid, and claim that by the terms of the instrument Murdock is bound to refund it.

It will be noticed that Murdock was not a party to the suit between Shaw's assignee and Daniel, in which the credit was disallowed; nor does it appear that he was notified of its pendency. He is, therefore, not bound by the judgment rendered in it. The undertaking of Murdock, in the receipt given for the money, was not to secure from Shaw or his assignee a credit on the debt sued on, but was a guaranty to Daniel that the payment was a valid discharge of the debt *pro tanto*, and if it were not, that he would make it good. Under this guaranty Daniel was bound, if sued, to set up the defence, and if valid, sustain it, or to notify Murdock of the pendency of the suit, and give him an opportunity of making the defence. He did not give the notice; and he is therefore bound to show not only that he made the defence, but also that

the defence could not legally be made effectual. That the Circuit Court decided against this defence is not sufficient, if in fact the decision was wrong. This brings us to the inquiry as to the effect of a voluntary payment made by a garnishee in a case like this.

It is insisted by the defendants in error that the payment is utterly void, and could not have been made effectual in any way, as no bond was given as provided for by the statute. We do not agree with this view. The judgment by default in attachment, though on service by publication only, is not void, and the judgment against the garnishee is good and valid. This last judgment operates as an assignment to the garnishing creditor of the debt due by the garnishee. The plaintiff in attachment thus became the owner of the debt due by the garnishee, but without power to enforce collection until he had provided the security required by the statute for the restoration of the money in case this judgment and assignment should afterwards, within the time limited, be avoided by disproof of the debt upon which the attachment was based. Sect. 1479 of the Code of 1871 provides simply that the plaintiff in attachment, before any sale of the defendant's property shall be made, or before execution shall be issued against the garnishee, shall enter into bond, with good security, conditioned to restore the money if the defendant shall within a year and a day come into court and disprove or avoid the debt. And the statute further declares that any *sale* made without such bond being given shall be utterly void. This statute applies only to judgments in attachment proceedings where the defendants have not been served with process nor appeared, and therefore, presumably, have had no opportunity of making defence. Its purpose is to secure them this opportunity within the time limited. The giving of the bond to restore the money was therefore made a condition precedent to a forced sale, which would divest the defendant's title to his property seized under the attachment. The statute also prohibits a levy and sale of the garnishee's property until after

such bond shall be given.  It protects the garnishee from a compulsory payment by a sale of his property; but it does not apply in terms to a voluntary payment made by the garnishee.  As to such payment, the garnishee is left free to act as he may choose.  If he choose to pay, then, if it be held that such payment is valid for all purposes, the defendant in attachment would be deprived of his right to collect the debt from the garnishee, even though he should disprove the debt for which he was attached.  This, though not against the express words of the statute, would be against its plain equity.  If, however, it be held, as we think is the true rule, that such payment is only provisionally good, subject to be annulled in case the attachment debtor should disprove or avoid the debt on which the attachment is based, then the rights of the defendant in the attachment, which we recognize as within the equity of the statute, are fully protected.  The attachment debtor may consent to or dispute the payment.  If he consent, the rights of all parties are settled.  If he dispute it, he can bring his action against the garnishee to recover the debt due, as if there had been no payment.  If the garnishee plead the judgment against him and its voluntary payment, the attachment debtor will then have the opportunity to show its invalidity by disproving or avoiding the debt upon which the attachment was procured.  This rule preserves the rights of all the parties, and secures to the defendant in attachment the opportunity of disproving the debt upon which he was attached.  It secures to the garnishee the right which belongs to all debtors, to discharge their debts when due.  Payment by the garnishee does not, like a judicial sale, destroy or change the title of the debtor in attachment.  If his estate be sold, and no bond be given to restore the proceeds, as required by the statute, he has been deprived, if the sale be held valid, of his property by proceedings under a judgment of which he had no notice, and deprived also of the opportunity secured by the statute of disproving within a year and a day the alleged debt against him.  He is utterly without remedy.

Hence the statute has declared such sale without bond to be utterly void. The case is far different with reference to a voluntary payment by the garnishee. Such payment changes no title ; nor does it put the defendant in attachment — the creditor of the garnishee — in a worse, but in a better position than if the bond had been given. In the latter case he would only be allowed to disprove the debt within a year and a day, and failing for that time, his remedy would be forever gone. In the case of voluntary payment, his claim being a chose in action, and reducible to possession and enjoyment by suit only, we allow him, at any time whenever he may bring such suit, to disprove the debt for which he was attached, and thus avoid the effect of the payment on his rights. It is true that, until the bond is given, it is doubtful to whom the garnishee may validly pay, and he is allowed to refuse to pay until the doubt is removed. Hence the statute protects him from compulsory collection by the attachment debtor, by prohibiting the issue of an execution against him and declaring a sale of his property under such execution void. If, however, he make voluntary payment to one of two claimants of the debt, there is nothing in the words of the statute or in its policy to prevent him from taking the risk that he pays to the right party, and if it turns out that he has paid the true creditor, then to allow the payment to be valid.

This view disposes of the case as presented in the record, and it is therefore unnecessary to express an opinion on the other questions raised and discussed by counsel.

The judgment is reversed and a new trial granted.

In response to suggestions of error in the foregoing opinion, presented by the counsel for the defendants in error, the court made an *addendum* to the opinion, in which the suggestions of error are indicated and answered, as follows : —

GEORGE, J., responding for the court.

It is urged in the suggestions of error filed by counsel for

the defendants in error that the payment was not even provisionally good, because it appeared that Shaw had assigned the debt to White before the attachment proceedings.  But it is also shown that Daniel, the garnishee, knew nothing of the assignment at the time he made payment.  As against the assignee, the payment would have been good if the refunding bond had been given.  This is not denied, and it is also made good by our statute.  The failure to give the refunding bond did not affect the assignee's interest.  The bond was not intended to protect him.  It was solely for the benefit of the defendant in attachment, and we have shown that, as against him, the payment was provisionally good.

It is urged also that the judgment against the garnishee on which the credit was disallowed is at least *prima facie* evidence that the disallowance was rightful.  The judgment was purely, as to Murdock, *res inter alios acta*, and was not evidence against him for any purpose except to show its own rendition.  The right reserved to the defendant in attachment by the bond to restore, was a right to disprove or avoid the debt.  This imposed affirmative action on him, and we hold that in the suit against the garnishee he must do exactly what he would have been compelled to do if the bond had been given and he had come into court to avoid the judgment.